BYRNES, Judge.
P.A. Menard, Inc. (Menard) and its insurer, Continental Casualty Company, appeal a judgment awarding plaintiff damages for back injuries sustained in a slip and fall accident on Menard’s premises. Plaintiff also appeals, seeking an increase in the damage award. We reverse.
On February 5, 1985, plaintiff, Nidia Montesino, drove to the warehouse of P.A. Menard, located at 1121 South Claiborne Avenue in New Orleans, where she brought her order book for groceries to be delivered to Penny’s Food Store. Plaintiff and Sauro Montesino, were the owner/operators of the grocery at 3154 St. Claude Avenue. Plaintiff parked her car on Clio Street and entered P.A. Menard’s through the Clio Street loading bay area rather than the entrance on Claiborne and slipped and fell in the warehouse. After plaintiff fell, Robert L. Buster, a Menard receiving clerk, saw her on the floor. Plaintiff went to the office near the Claiborne entrance, placed her order, and reported her fall to Ms. Jo Fran Berthelot. Plaintiff returned a few days later and obtained a letter from Ms. Berthelot directing plaintiff to be examined by a physician. Plaintiff went to her own doctor, Dr. Blampkin, who found a hemato-ma and noted that Ms. Montesino complained of pain in her back and left side. Dr. Blampkin continued to see Ms. Montesi-no and prescribed Tylenol # 3 and Empirin with Codeine #4.
On September 2, 1985, a neurosurgeon, Dr. Raymond Kitziger, first saw Ms. Mon-tesino, who complained of back and left leg/side pain. When he saw her on November 11, 1985, Ms. Montesino related *706 that she was having a domestic problem and did not want to be examined. She told him she had gone back to work and he discharged her.
Meanwhile, on November 6, 1985, plaintiff was involved in a rear-end automobile collision in which she sustained back and right leg injuries.
Dr. Jose L. Garcia-Oller, a neurosurgeon, saw plaintiff once on October 31, 1986 on referral from Dr. Blampkin. He diagnosed that plaintiff suffered a pinched nerve from a ruptured disc and stated that the fall ruptured a pre-existing bulging disc. He noted that because she was overweight, Ms. Montesino was not a good candidate for surgery. He found that she would be permanently disabled for five years with a 20 percent chance of permanent disability for ten years.
Dr. Richard Levy, a neurosurgeon, performed an examination of the plaintiff in November, 1987. He testified that her X-rays indicated a moderately severe degeneration of the L4 and L5, and a marked narrowing of the disc space but he found no ruptured disc.
On June 27, 1985, plaintiff filed suit, claiming that P. A. Menard was negligent in creating and/or failing to remedy defects which caused her injuries. After a trial before a commissioner on September 19-21,1988, the trial court rendered a judgment in favor of the plaintiff and awarded damages in the amount of $129,507.
On appeal, defendants contend that the trial court erred in finding that: (1) the plaintiff was an invitee in the area where she fell; (2) plaintiff was not negligent; (3) defendants were negligent; and (4) a premise hazard existed. Additionally, defendants argue that the trial court erred in: (5) applying a level of duty applicable to retail establishments; (6) failing to accept the unrefuted testimony of their expert witness; (7) finding the testimony of plaintiff and Sauro Montesino to be credible; (8) finding that plaintiffs injuries were caused by the slip and fall inside Menard’s premises; and (9) awarding excessive damages.
The initial issue is whether the premises presented an unreasonable risk of harm and defendants owed plaintiff a duty to prevent the harm which she incurred. Spencer v. Magee, 563 So.2d 564 (La.App. 4th Cir.1990), writ denied, 567 So.2d 1123 (La.1990). The parties do not dispute that Ms. Montesino fell on the premises of P.A. Menard. However, there was conflicting testimony as to when and where plaintiff fell. In her petition, Ms. Montesino stated that the incident occurred around 8:30 a.m. At trial she testified that she fell inside the warehouse around 8:00 a.m. although at her deposition she stated that the accident occurred between 10:00 an 11:00 a.m. in the morning.
Plaintiff related that it was not raining when she entered the warehouse but it was dark. At trial she stated that it had rained earlier and she could see puddles in the street although in her second deposition, she related that the streets were not wet. Nash Roberts, III, an expert in the field of meterology, testified on behalf of the defendants, indicating that there was no sunshine on February 5, 1985, with spotty rain showers before 10:00 a.m. and heavy rain the rest of the day after 10:00 a.m. Almost every weather station, including the City Hall gauge close to Menard’s, recorded a measurement of three and one-half inches of rainfall that day.
In her deposition testimony Ms. Montesi-no stated that a truck was unloading when she went into the loading bay area. At trial she related that she passed a black man sitting at a counter, went through the plastic or rubberized curtain and slipped and fell on water residue inside. At her deposition, Ms. Montesino testified that she fell in front of the box office of the man who assisted her. Mr. Robert L. Brister testified that he was the receiving clerk working in the receiving bay area. He saw Ms. Montesino on the floor of the loading bay area about ten feet from his desk and tried to assist her but she refused his help. On two previous occasions he told Ms. Mon-tesino that she was not supposed to be there. Both he and Ms. Berthelot testified that the incident occurred after lunch.
Plaintiff’s testimony contained other discrepancies besides the time and location of *707 the accident. In her depositions plaintiff denied being involved in accidents and lawsuits other than the instant case and one arising in the late 1970’s; however, at trial, Dr. Blampkin related that he treated Ms. Montesino after a separate vehicular accident which occurred on November 6, 1985, resulting in another lawsuit. Ms. Montesi-no testified that she was convicted twice of possession of cocaine and was incarcerated from February through May, 1986. Plaintiff stated that she had too much pain and that her medication was not working so she began buying cocaine. Dr. Blampkin prescribed Tyle&ol #3 and Empirin with Codeine # 4 and he testified that the plaintiff said nothing about wanting additional medication. He also stated that he could not determine whether plaintiff’s disc problems occurred as a result of the fall in February, 1985 and not from the auto collision in November, 1985.
An owner must take reasonable care to protect a business invitee from any dangerous conditions on the premises. Nunez v. Isidore Newman High School, 306 So.2d 457 (La.App. 4th Cir.1975). P.A. Menard claims that it does not conduct business through walk-in retail trade but usually takes orders over the phone. Instead of using the front entrance, plaintiff parked her car and entered through the loading bay area where trucks backed. According to her testimony, no signs were posted at the time of the accident. The trial court found that the defendant had posted signs in English prohibiting rear-door entries by customers and determined that Ms. Mon-tesino was excluded from the general prohibition because she had used the rear entrance for eight years prior to the accident. Although plaintiff was Cuban, she had been in the United States approximately 20 years. Plaintiff drove to P.A. Menard’s, indicating she should have some understanding of the English language if she took a test for a driver’s license and could read traffic signs. We conclude that plaintiff was not an invitee but was in a prohibited area which was clearly posted.
Even if Ms. Montesino were an invitee, the storekeeper has a duty to keep the area reasonably safe and the invitee who is in an area other than a display area is charged with reasonable care for his own safety, and must see and avoid obvious hazards. Davis v. Winningham Datsun-Volvo Inc., 493 So.2d 719 (La.App. 2d Cir. 1986). To require a store owner to keep a floor completely dry during a time of rain or hold him responsible for every slick place due to tracked in rain water would impose an impossible and unreasonable standard of care. McGuire v. National Super Markets, 425 So.2d 1315 (La.App. 1st Cir.1983). Although the owner of a commercial establishment has an affirmative duty to keep the premises in a safe condition, he is not the insurer of a customer’s safety. Brown v. Schwegmann Giant Supermarkets, Inc., 535 So.2d 1307 (1989), writ denied, 538 So.2d 595 (La.1989), Foster v. Walgreen’s Drug Stores, Inc., 468 So.2d 656 (La.App. 4th Cir.1985); Estes v. Kroger Co., 556 So.2d 240 (La.App. 2d Cir.1990), writ denied 559 So.2d 1360 (La.1990); McGuire, id.
Although there were no written cleanup procedures, Ms. Berthelot testified that porters cleaned every morning, afternoon and evening. She noted that they constantly swept aisles, checking for debris or anything on the floor. One of Mr. Me-nard’s rules was always to keep the floors cleaned and mopped. If there were spillage on the ground, porters were constantly to wash and clean. Robert Brister also stated that porters cleaned up all the time. Murvan M. Maxwell testified as an expert in the field of safety and architecture on behalf of P.A. Menard. He inspected the premises, finding a typical industrial concrete floor with rough texture which provided good traction. He noted no imperfections but related that water will drain off trucks onto the floor of the loading bay area and the surface gets wet, making the flooring slippery, a condition which could not be prevented.
Because Ms. Montesino’s daughter filled out the order in advance and P.A. Menard is a wholesale business, we do not find distractions in the warehouse that would hinder plaintiff’s ability to avoid obvious *708 hazards. We conclude that P.A. Menard was reasonably prudent in its effort to keep the premises in a reasonably safe condition under the circumstances of heavy rain on February 5, 1985. Although it may be difficult to traverse an area in wet weather, a visitor must exercise reasonable care and plaintiff should have been aware that she should proceed with greater caution than on a sunny day, particularly in the area where she walked on either side of the rubberized curtain. Clearly the trial court was manifestly erroneous in finding that P.A. Menard was negligent.
For the foregoing reasons, the judgment is reversed with costs assessed to plaintiff.
REVERSED.